UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| **FRANK WILLIAM HADAMEK, JR.**, § <br> § <br> Petitioner, § <br> v. § <br> § <br> **NATHANIEL QUARTERMAN, Director,** § <br> **Texas Department of Criminal Justice,** § <br> **Institutional Division,**[1] § <br> § <br> Respondent. § | **CIVIL ACTION V-06-02** |

**MEMORANDUM OPINION & ORDER**

Frank William Hadamek, Jr. ("Hadamek"), a Texas prison inmate, has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging a state court conviction and life sentence for aggravated robbery. Respondent has filed a motion for summary judgment (Dkt. #11) and Hadamek has responded (Dkt. #11). Having reviewed the motion, response, the record and the applicable law, the Court **GRANTS** Respondent's motion and **DISMISSES** the habeas petition. The reasons are stated below.

**Procedural History**

On October 9, 2002, a judgment and sentence for aggravated robbery was entered against Petitioner Frank William Hadamek ("Hadamek") in the District Court, 377th Judicial District, Victoria County, Texas. (Trial R. 101-04).[2] A jury assessed a life sentence after having found

---

[1] Nathaniel Quarterman is the proper respondent and is hereby substituted as such. FED. R. CIV. P. 25(d)(1).

[2] "Trial R." refers to the document filed by Respondent styled "Clerk's Record, Volume I of I, Trial Court Cause No. 02-5-19,428-D, In the 337th District Court of Victoria County, Texas, Honorable Robert C. Cheshire, Judge Presiding." This document appears to be the trial court record presented on direct appeal.

that Hadamek had previously been convicted of aggravated robbery, burglary of a motor vehicle, and aggravated rape.  (Trial R. 101-04).  The judgment and sentence were affirmed on appeal. *Hadamek v. State*, No. 13-02-552-CR, 2004 WL 1416213 (Tex. App.–Corpus Christi June 24, 2004).  The Texas Court of Criminal Appeals refused Hadamek's petition for discretionary review on December 1, 2004.  (Dkt. #1 at 3).

On August 31, 2005, Hadamek filed an application for a writ of habeas corpus in state court.  (Habeas R. 1).[3]  This application was denied without written order on November 30, 2005.  (Dkt. #7-3).  On January 6, 2006, Hadamek's Federal petition for a writ of habeas corpus was filed.  (Dkt. #1).  Hadamek claims to have placed his Federal petition in the prison mail system on January 3, 2006.  (Dkt. #1 at 9).

**Background**

The following facts were presented as evidence in Hadamek's trial.  Novell Irene Cano ("Cano") testified that on February 11, 2002, at about 5:20 P.M., she was working at Sunset Video in Victoria, Texas.  (Trial Tr. 142-43).[4]  At approximately that time, a man who Cano later identified as Hadamek (Trial Tr. 149), entered the store and placed sticks in the doorway, propping it open.  (Trial Tr. 144).  The man's nose and mouth were covered by a bandanna (Trial Tr. 144), which Cano identified as blue (Trial Tr. 136).  The man was wearing faded blue jeans and a long sleeve plaid shirt.  (Trial Tr. 144).  Cano described him as thin, about 5'9" tall with

---

[3] "Habeas R." refers to the document filed by Respondent styled "CCA Scanning Cover Sheet, CaseNumber: WR-63,279-01, EventDate: 10/19/2005, Style 1: HADAMEK, FRANK WILLIAM Jr."  (Dkt. #7-3); (Dkt. #7-4).  This document appears to be the state habeas record.

[4] "Trial Tr." refers to the trial transcript identified by the document styled "REPORTER'S RECORD, CAUSE NUMBER 02-5-19, 428-D . . . . PRETRIAL MOTIONS, VOIR DIRE EXAMINATION, CASE-IN-CHIEF AND HEARING ON PUNISHMENT."

unkempt wild hair and wild eyes. (Trial Tr. 146, 157). The man proceeded to pull out a kitchen knife (Trial Tr. 144), which was about eight inches long with a faded wooden handle and non-serrated blade (Trial Tr. 145). The man jumped over the counter with the knife and stated, "'Give me the money or I'll kill you.'" (Trial Tr. 145). Cano then opened up the cash register while she was told to "hurry, hurry, hurry." (Trial Tr. 146-47). The man then took approximately $150.00 from the cash register and left the store. (Trial Tr. 147).

Cano provided a written statement to Detective Tom Copeland ("Detective Copeland") two days after the robbery. (Trial Tr. 148). At that time, Cano participated in a photo lineup with Detective Copeland. (Trial Tr. 156-58). Out of a series of photographs, Cano identified Hadamek as the individual that robbed the Sunset Video store. (Trial Tr. 157-58). Cano covered the bottom portions of the photo line up suspects' faces and examined their eyes and hair. (Trial Tr. 157-58). When the perpetrator was getting money out of the store's register, Cano testified that she was less than two feet from him and got a good look at his facial features. (Trial Tr. 156-57). Cano was certain that she had made a proper identification. (Trial Tr. 158).

Cano's testimony was followed by the testimony of Detective Copeland and Debby Zeplin ("Zeplin"), an identification technician for the Victoria Police Department. (Trial Tr. 160-180). After Zeplin's examination had concluded, prosecution and defense counsel approached the bench and discussed the issue of identity. (Trial Tr. 180-87). The trial court stated that evidence of extraneous offenses would likely not be admissible unless identity was put into issue. (Trial Tr. 181). Nonetheless, after an extended colloquy between the trial court, counsel, and Defendant, Hadamek insisted on putting identity into issue despite his attorney's contrary advice. (Trial Tr. 181-86).

Defense counsel proceeded to put identity into issue through the testimony of Dr. Jack Greeson, Ph.D ("Dr. Greeson"), a licensed psychologist. (Trial Tr. 195). Dr. Greeson testified that he was an expert in "neuropsychology or human information processing" and eyewitness testimony. (Trial Tr. 197). He then explained some of the factors commonly considered when evaluating eyewitness testimony. (Trial Tr. 200-01). Dr. Greeson also testified that he reviewed reports related to Hadamek's case, (Trial Tr. 198), and concluded that an eyewitness identification by Cano could have been unreliable for many reasons. (Trial Tr. 214-221).

After Dr. Greeson's testimony had concluded, the trial court excused the jury and heard testimony on extraneous offenses. (Trial Tr. 259-350). The trial court then conducted a hearing to determine the admissibility of the evidence. (Trial Tr. 350-60). After considering arguments made by the State and defense counsel, the trial court determined that the evidence of extraneous offenses was admissible. (Trial Tr. 359-60).

Mary Elizabeth Moreno ("Moreno") testified that on February 10, 2002, at approximately 10:30 P.M., a man walked into the Diamond Shamrock store in which she was working. (Trial Tr. 277-78). The man put a tree branch in the doorway of the store, propping it open. (Trial Tr. 280). His face appeared to be covered by a woman's stocking. (Trial Tr. 279). The robber said "'[h]urry, hurry, or I'm going to stab you." (Trial Tr. 280). He had in his possession a long screwdriver. (Trial Tr. 280).

The Diamond Shamrock robbery of February 10, 2002 was captured on the store's surveillance system. (Trial Tr. 282). Cano observed the videotape and testified that the Diamond Shamrock robber resembled the Sunset Video robber in appearance and voice. (Trial Tr. 342).

4

Walter Byerly ("Byerly") testified that on February 12, 2002, at approximately 2:00 to 2:30 A.M., he was robbed at a Circle K in Victoria where he worked. (Trial Tr. 271-72). Noone else was working in the store at that time. (Trial Tr. 272). Byerly described the robber as about six feet tall and without any disguise. (Trial Tr. 272). The robber took a "Thrifty Nickel" rack in the doorway to hold the door open. (Trial Tr. 273). While Byerly was making coffee, the robber ran around the store's counter and opened the cash register with a brown handled kitchen knife. (Trial Tr. 273). Before Byerly could confront the robber, he left the store with stolen money from the cash register. (Trial Tr. 273-74).

Officer Jeffrey Lehnert ("Officer Lehnert") of the Victoria Police Department testified that on February 12, 2002, at approximately 5:30 A.M., he responded to a report of theft at a Circle K in Victoria.[5] (Trial Tr. 288). Officer Lehnert arrived at the scene and talked to the clerk, Tammy King ("King"). King told Officer Lehnert that while she was working on a soda fountain, a man walked in, propped open the door, pried open the cash register with a large screwdriver, and ran out the door with some money. (Trial Tr. 289-90). The screwdriver was described as "long handled" and "flat." (Trial Tr. 290). King described the individual as being very thin and wearing blue jeans with a checkered plaid coat and a black mask. (Trial Tr. 290). The entire robbery in the Circle K was captured on the store's surveillance system. (Trial Tr. 290-91).

Officer William Stillwell ("Officer Stillwell") of the Victoria Police Department testified that on February 12, 2002, around the time that Officer Lehnert responded to the robbery call

---

[5] The Circle K involved in Officer Lehnert's testimony is different from the Circle K involved in Byerly's testimony.

described above, he was patrolling nearby the Circle K in question. (Trial Tr. 297-98). While searching for suspicious activity, Officer Stillwell observed a parked van's brake lights go on. (Trial Tr. 298). However, the vehicle's headlights were turned off. (Trial Tr. 298). When Officer Stillwell turned on his overhead lights, the suspicious vehicle took off. (Trial Tr. 301). Stillwell pursued the fleeing vehicle at speeds up to 125 miles per hour. (Trial Tr. 301-02). Other officers joined the pursuit. (Trial Tr. 302). The van eventually drove off the road, through several fences and into a wooded area. (Trail Tr. 304). Officer Stillwell found the van crashed into a tree with money strewn over the floorboard, but with no one inside. (Trial Tr. 304-05). A long screwdriver was found inside the van. (Trial Tr. 307). Zeplin later testified that a kitchen knife and women's hosiery with holes cut in it were also found in the van. (Trial Tr. 331-32). Doug Obenhaus ("Obenhaus"), the owner of Car Country, testified that he left this very van with Hadamek to repair. (Trial Tr. 312). Hadamek, however, did not report the van stolen. (Trial Tr. 420).

A search to find the suspect ensued, and two and a half hours later, Hadamek was found fleeing from some brush. (Trial Tr. 324). When Hadamek was apprehended, he was wearing a plaid shirt (Trial Tr. 325) and had a piece of hosiery with holes cut in it (Trial Tr. 332, 336).

Hadamek testified that on February 12, 2002, at approximately 5:30 A.M., he was sitting under a tree and drinking coffee when he saw the van in question drive by at high speed with several police cars following it. (Trial Tr. 467-68). He recognized the van as his and decided to pursue it on his four wheeler. (Trial Tr. 467-68). Hadamek drove his four wheeler to an area where he saw police cars parked, and then went further off road. (Trial Tr. at 468). Hadamek drove his four wheeler into a creek where it got stuck. (Trial Tr. 469). He then began moving

on foot. (Trial Tr. 469). When he saw his plaid jacket, other jacket, and white bag located on a fence, Hadamek picked up all these items and continued on. (Trial Tr. 469). Once Hadamek arrived into an open field, he saw dogs, then officers, and was then arrested. (Trial Tr. 470).

## Legal Standard

This petition is governed by applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). The intent of the AEDPA is to prevent federal habeas "retrials" and to ensure that state-court convictions are given effect to the extent possible under the law, *Bell v. Cone*, 122 S.Ct. 1843, 1849 (2002), by limiting the scope of collateral review and raising the standard for federal habeas relief. *Robertson v. Cain*, 324 F.3d 297, 306 (5th Cir. 2003).

Under the AEDPA, federal relief cannot be granted on claims adjudicated on the merits in state court unless the state adjudication was (1) contrary to clearly established federal law as determined by the Supreme Court, or (2) involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *Williams v. Taylor,* 120 S.Ct. 1495, 1519 (2000)*, citing* 28 U.S.C. §§ 2254(d)(1) and (2). A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court or if it confronts a set of facts that are materially indistinguishable from a Supreme Court decision and arrives at a result different from the Court's precedent. *Early v. Packer*, 123 S.Ct. 362, 365 (2002). A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams,* 120 S.Ct. at

1520, 1523. In deciding whether a state court's application was unreasonable, this court considers whether the application was objectively unreasonable. *Id.* at 1521

The AEDPA affords deference to a state court's resolution of factual issues. Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state-court proceeding. *Miller-El v. Cockrell*, 123 S.Ct. 1029, 1041 (2003). A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Miller-El*, 123 S.Ct. at 1036.

## Claims

The Director concedes that several of Hadamek's claims are fully exhausted. Indeed, a review of the record reveals that Hadamek has consistently raised the same grounds for review. (Dkt #1 at 7-8); (Habeas R. 6-8). Specifically, Hadamek claims the following:

1. Ineffective Assistance of Counsel because:

    a. Defense counsel failed to request a hearing on the admissibility of the in-court identification based upon an unreliable out of court identification procedure.

    b. Defense counsel failed to investigate the facts surrounding the arrest.

2. Denial of compulsory process because defense counsel failed to obtain witnesses for Hadamek's defense.

3. Denial of due process because he was housed in a jail that prevented him from meeting persons able to assist him in preparation of a defense.

  4. The trial court abused its discretion by not admitting the testimony of Ty Trahan.

(Dkt #1 at 7-8). Each of Hadamek's claims will be addressed in turn.

**Analysis**

**A.** **Ineffective Assistance of Counsel**

  The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. U.S. CONST. amend. VI. A federal habeas corpus petitioner's claim that he was denied effective assistance of counsel is measured by the standards set out in *Strickland v. Washington*, 104 S.Ct. 2052 (1984). To assert a successful ineffectiveness claim, a petitioner must establish both constitutionally deficient performance by counsel and actual prejudice as a result of counsel's deficient performance. *Id.* at 2064. The failure to demonstrate either deficient performance or actual prejudice is fatal to an ineffective assistance claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

  A counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 104 S.Ct. at 2064. In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy. *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996). To overcome this presumption, a petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). However, a mere error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Strickland,* 104 S.Ct. at 2066. Actual prejudice from a deficiency

is shown if there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 2068.  To determine prejudice, the question focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair.  *Lockhart v. Fretwell*, 113 S.Ct. 838, 844 (1993).  In that regard, unreliability or unfairness does not result if the ineffectiveness does not deprive the defendant of any substantive or procedural right to which he is entitled.  *Id.*

In reviewing an ineffective assistance of counsel claim under the AEDPA, the test is not whether the petitioner has made a showing under *Strickland*, but whether the state court's decision that the petitioner did not make a *Strickland* showing was contrary to or an unreasonable application of the standards under federal law regarding ineffective assistance of counsel.  *Schaetzle v. Cockrell*, 343 F.3d 440, 444 (5th Cir. 2003).

**1.    Defense Counsel Failed to Request a Hearing on the Admissibility of the In-Court Identification Based Upon an Unreliable Out of Court Identification Procedure.**

Hadamek argues that his defense attorney failed to object to or request a hearing on Cano's in court testimony regarding her identification of Hadamek in a photo line up.  (Dkt. #1 at 7); (Habeas R. 20-22).  Hadamek claims that Cano's identification was constitutionally impermissible.  (Habeas R. 20-22).  To support his argument, Hadamek emphasizes that: (1) Cano covered the nose and mouth of suspects while she examined the photo line up.  (Habeas R. 22); (2) Cano focused on the perpetrator's knife when he entered Sunset Video (Habeas R. 21); and (3) a "person of interest" was not included in Cano's photo line up.  (Habeas R. 22).

The Supreme Court has held that in the case of an eyewitness identification at trial that

follows a pretrial photographic identification, the conviction will only be set aside "if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968). "It is the likelihood of misidentification that violates the defendant's right to due process." *Neil v. Biggers*, 409 U.S. 188, 198 (1972). To determine whether a misidentification has resulted a two part inquiry is required. First, we must determine whether the photo lineup was impermissibly suggestive. Second, we must ask whether, based on the totality of the circumstances, the display posed a substantial likelihood of irreparable misidentification. *Simmons*, 390 U.S. at 384; *see also Manson v. Brathwaite*, 432 U.S. 98, 114 (1977) (stating that the gravamen of this determination is reliability). When assessing the reliability of the identification, the Supreme Court has instructed us to consider the following factors: "the opportunity of the witness to view the perpetrator at the time of the crime, the degree of the witness's attention, the accuracy of the witness's prior description of the criminal, the witness's level of certainty at the time of confrontation, and the length of time between the crime and confrontation." *Biggers*, 409 U.S. at 200-201; *Cooks v. Johnson*, 265 F.3d 1060 (5th Cir. 2001) (per curiam). The state court's consideration of these factors are all questions of fact as to which the statutory presumption applies. *Sumner v. Mata*, 455 U.S. 591, 597 (1982).

After examining the record, it does not appear that Cano's photo line up was impermissibly suggestive. Cano testified that she did not recall Detective Copeland, the detective conducting the line up, to have said that the suspect was included in the line up. (Trial Tr. 157). To the contrary, Cano testified that Detective Copeland only asked her if she could identify the perpetrator in any of the photographs. (Trial Tr. 157). Furthermore, the photo line

up used is attached to the Trial Transcript as Defendant's Exhibit #1.  The line up shows six white males who exhibit similar features, including facial hair.  (Trial Tr. Defendant's Ex. 1). The line up does not in any way indicate which suspect is Hadamek.  (Trial Tr. Defendant's Ex. 1).

It is also clear that Cano's photo line up identification did not create a substantial likelihood of irreparable misidentification.  Cano testified that she had a good opportunity to view the perpetrator at the time of the crime because she was less than two feet away from him. (Trial Tr. 156).  Cano further testified that the perpetrator was in her plain view and that she could see his clothes and the part of his face not covered by the bandanna.  (Trial Tr. 157-58). Cano's testimony also shows that her degree of attention was high.  She was being robbed at close range.  (Trial Tr. 156-57).  Furthermore, she was able to describe the perpetrator's attributes with detail.  (Trial Tr. 156-59).  Moreover, Cano stated that she was certain of her identification.  (Trial Tr. 158).  Cano's photo line up was conducted only two days after she was robbed.  (Trial Tr. 148).  This testimony remains uncontroverted.

Hadamek's arguments regarding the impermissibility of Cano's photo line up identification are without merit.  Although Cano testified that she focused on the perpetrator's knife when he entered the Sunset Video (Trial Tr. 152), she testified that her attention later shifted to his other features (Trial Tr. 156-58).  Cano's decision to cover the nose and mouth of photo line up suspects did not render her identification unreliable.  Rather, her technique focused her attention to the features she observed while eliminating those she did not observe. Hadamek's claim that a "person of interest" was not included in the lineup is also of no significance.  At the time of Cano's line up, the police were no longer interested in the "person

of interest" Hadamek makes reference to. (Trial Tr. 168).

The Court finds that any objection or request for a hearing as to the constitutionality of Cano's photo identification testimony would have been frivolous. Cano's identification was not impermissibly suggestive or unreliable. Therefore, defense counsel's decision not to object or request a hearing as to Cano's identification was not objectively unreasonable. Accordingly, the Court finds that Hadamek is not entitled to habeas relief for his identification claim.

**2.     Defense Counsel Failed to Investigate the Facts Surrounding the Arrest.**

Hadamek claims that his defense attorney failed to conduct a proper investigation into his arrest. (Dkt. #1 at 7). Specifically, Hadamek claims that his attorney failed to investigate his arrest scene and obtain information related to his alleged four wheeler.[6] To prevail on an allegation that an attorney failed to adequately investigate a case, a petitioner must show what the investigation would have revealed and how it would have helped the petitioner's defense. *See Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002); *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1983). Defense counsel are afforded great deference with regard to how they conduct their investigations. *Green*, 882 F.2d at 1003.

Hadamek's present claim fails because he has not proven what an investigation at the scene of his arrest would have yielded. Instead, he merely speculates that some information

---

[6] It is clear that Hadamek's claim concerns information regarding the four wheeler because his habeas petition directs the Court to a "Jury note" at "Clerks Record pg. 83." (Dkt #1 at 7). Hadamek's state habeas petition also makes reference to a jury note and states in the pertinent part as follows: "Counsel did not visit arrest site in an attempt to locate or possibly obtain information concerning petitioner's use of a four wheeler vehicle prior to his arrest. . . . (See C.R. pp. 88- Jury Note)." (Habeas R. 8). Page 88 of the appellate record contains a copy of the referenced jury note which, in the pertinent part, states: "We would like to see the video and also we would like to know if the 4-wheeler was recovered. We would like to see the line up photos."

13

related to his four wheeler would have been revealed. Even if Hadamek's four wheeler was present at the scene of his arrest on the night of his arrest, it does not follow that evidence related to the four wheeler would necessarily be found at the scene on a future date.[7] Accordingly, the Court finds that Hadamek is not entitled to habeas relief for his failure to investigate claim.

**B.     Denial of Compulsory Process**

Hadamek contends that he was denied compulsory process because his attorney failed to assist him in "obtaining witnesses" for his defense. (Dkt. #1 at 7). Specifically, Hadamek claims that his attorney failed to subpoena three witnesses: Jim Cook, Walter Brumlin and Dan Ready. (Habeas R. 15-16). However, Hadamek and his attorney were never denied the procedural mechanisms necessary to employ subpoenas. Rather, Hadamek's attorney simply did not subpoena the three witnesses mentioned above. Because Hadamek complains about his defense attorney's failure to comply with his wishes rather than any denial of process, the Court construes Hadamek's present claim as a claim for ineffective assistance of counsel.

Hadamek's claim for the failure to subpoena witnesses does not succeed for several reasons. Although Hadamek presents his view as to what the unsubpoenaed witnesses' testimony would be, such assertions are speculative. Hadamek has not provided affidavits or other evidence which would prove the substance of their testimony. "'Hypothetical or theoretical' testimony will not justify the issuance of a writ . . . ." *Martin v. McCotter*, 796 F.2d 813, 819 (5th Cir. 1986). Furthermore, "'the presentation of testimonial evidence is a matter of trial strategy and . . . allegations of what a witness would have testified are largely speculative.'"

---

[7] The Court notes that Hadamek's counsel at the time of trial was his third court appointed attorney. The trial court permitted the first two appointed attorneys to withdraw from their representation of Hadamek.

14

*Coble v. Dretke*, 444 F.3d 345, 350 (5th Cir. 2006)(citations omitted).  Indeed, to demonstrate the requisite *Strickland* prejudice, Hadamek must show not only that the testimony in question would have been favorable, but also that the witness would have testified at trial.  *Evans,* 285 F.3d at 377 (citing *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985)).  Hadamek has not established either of these requirements.[8]  Lastly, Hadamek has not demonstrated sufficient prejudice due to the lack of his desired witnesses' testimony. Accordingly, the Court finds that Hadamek is not entitled to habeas relief for his denial of compulsory process claim.

**C.     Denial of Due Process Because Hadamek was Housed in a Jail That Prevented Him From Meeting Persons Able to Assist Him in Preparation of a Defense**.

Hadamek maintains that he was denied due process by being housed in Aransas County Jail instead of Victoria County Jail. (Dkt. #1 at 7).  In his state habeas brief, Hadamek explains his claim, arguing that: (1) he was transferred for disciplinary reasons; (2) he was having trouble communicating with his girlfriend; (3) he was uanble to confer with defense counsel; and (4) he experienced inhumane treatment in transport.

While Hadamek was awaiting trial, jail officials decided to confine him in Aransas

---

[8] It is clear from the record that defense counsel made diligent attempts to locate Hadamek's desired witnesses.  In the case of Ty Trahan, defense counsel managed to find Hadamek's desired witness and have him appear at the trial court. In regards to the three unsubpoenaed witnesses, Hadamek provided defense counsel with very limited information to assist in determining their location.  Because defense counsel did not have detailed information, he tried to cooperate with Hadamek to find witnesses.  Defense counsel requested that Hadamek be transported to Victoria County Jail so that he could confer with him, but Hadamek proved to be uncooperative and refused to meet.  (Trial Tr. 18-31).  At one point, defense counsel gave Hadamek two Victoria County phone books, a writing tablet, and a pen to enable him to identify the individuals who he wanted to subpoena.  (Trial Tr. 192-93).  Hadamek did not write down which individuals he wanted to subpoena and did not communicate that information by any other means.  (Trial Tr. 464).

County Jail rather than Victoria County Jail for safety reasons. (Trial Tr. 22-23). These jail officials were concerned that they would have to use a taser on Hadamek if he remained at Victoria County Jail. (Trial Tr. 23). Apparently, Hadamek had been arguing frequently. (Trial Tr. 23). Hadamek had also expressed concerns about his own safety at Victoria County Jail. (Trial Tr. 23). While at Aransas County Jail, Hadamek's defense attorney made arrangements for him to be transported to Victoria County Jail so that they could meet and discuss Hadamek's case. (Trial Tr. 24-25). Aransas County Jail officals notified defense counsel that they required one to two days notice for Hadamek's transfer. (Trial Tr. 24-25). When Hadamek was notified of the meeting, he refused to be transported to Victoria County Jail. (Trial Tr. 18-19). At that time, Hadamek asked his attorney not to bother him until the day of trial. (Trial Tr. 19). Defense counsel made an additional attempt to transport his client the following day, but this, too, was unsuccessful. (Trial Tr. 25-26). Hadamek also refused to be transported on another occasion when asked to view an evidentiary videotape. (Trial Tr. 26-27).

After reviewing the record, it is clear that Hadamek's claim regarding access to his defense attorney fails. The right of access to the courts guards against government practices that "effectively foreclose . . . access" and insures "access . . . [that] is adequate, effective, and meaningful." *See Bounds v. Smith*, 430 U.S. 817, 822 (1977). The record supports a finding that Hadamek had meaningful access to the courts. He had appointed counsel and was not representing himself pro se. Furthermore, Hadamek was given several opportunities to meet with defense counsel, but he refused to do so. Instead, he requested to be left alone and was uncooperative. Despite these hardships, defense counsel maintained to pursue Hadamek's defense. Hadamek cannot refuse to meet with counsel and then assert a claim of denial of access

to counsel. Accordingly, the Court finds that Hadamek's is not entitled to habeas relief for his lack of access to defense counsel claims.

Hadamek's due process claim regarding restrictions on visitation by his girlfriend also fails. Aransas County Jail officals limited visitation to persons related "by blood or by law" to detainees. (Trial Tr. 26). In *Block v. Rutherford,* 468 U.S. 576 (1984), the Supreme Court held that pretrial detainees have no right to contact visits. In arriving at this conclusion, the Supreme Court cited *Bell v. Wolfish,* 468 U.S. 576 (1984), for the proposition that conditions or restrictions of pretrial detention are permissible if related to a legitimate governmental objective not intended for punishment. *Id.* at 539. In *Bell,* the Supreme Court also stated the following: "There is no basis for concluding that pretrial detainees pose any lesser security risk than convicted inmates. Indeed, it may be that in certain circumstances they present a greater risk to jail security and order." 441 U.S. 520, 547 n. 28 (1979)(citations ommitted). Therefore, legitimate goals for protecting jail security equally apply to convicted prisoners and pretrial detainees. The Fifth Circuit has since determined that visitation rights "are a matter subject to the discretion of prison officals." *Berry v. Brady*, 192 F.3d 504, 508 (5th Cir. 1999)(citations ommitted). In the present case, the Court finds that the visitation restrictions present at Aransas County Jail were related to the legitimate governmental objective of prison safety. Indeed, Hadamek was transferred to Aransas County Jail for safety reasons. Moreover, Hadamek has not shown sufficient prejudice related to his lack of visitation. Accordingly, the Court finds that Hadamek's is not entitled to habeas relief for this visitation claim.

Hadamek's arguments regarding being transported for disciplinary reasons and inhumane treatment are without merit. Both of these contentions are wholly unsupported by record

evidence.

**D.     The Trial Court Abused Its Discretion by not Admitting the Testimony of Ty Trahan.**

Ty Trahan ("Trahan") was called as a defense witness to establish that certain law enforcement officers unfairly consider Hadamek a suspect. (Trial Tr. 505). When Trahan's testimony began to address this subject, the State objected and the trial court sustained the objection. (Trial Tr. 502). Hadamek's attorney then asked to make a bill of exception. (Trial Tr. 502). The trial judge excused the jury and permitted him to proceed. (Trial Tr. 502). Trahan then testified that an unidentified individual at the Victoria County Sheriff's Department told him that Hadamek should be considered a suspect in a burglary that occurred at Trahan's shop. (Trial Tr. 503-04). However, Trahan specifically testified that he did not know which individual at the Sheriff's Department told him to consider Hadamek as a suspect. (Trial Tr. 504). The trial court then sustained the State's objection and Hadamek's attorney excepted. (Trial Tr. 505).

Upon direct appeal, Hadamek argued that the trial court abused its discretion in excluding Trahan's testimony. The appeals court found the following:

> After reviewing the record we find that Trahan's testimony did not make the existence of any fact that is of consequence to the determination of aggravated robbery more or less probable. *See* Tex R. Evid. 401. Therefore the evidence was not relevant and not admissible. *See* Tex. R. Evid. 402; *Werner v. State*, 711 S.W.2d 639, 643 (Tex. Crim. App. 1986)(evidence of a collateral fact which does not in some logical way tend to prove or disprove the matters in issue is not admissible). Since the evidence was inadmissible the trial court did not abuse its discretion in excluding Trahan's testimony.

(Habeas R. 50)(footnote omitted).

After reviewing Trahan's testimony and the trial court's reasons for rendering the testimony inadmissible, the Court finds that Hadamek's abuse of discretion claim fails. Federal

courts, in reviewing federal habeas petitions, will not sit to review the mere admissibility of evidence under state law or errors under state law. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). "[I]n reviewing state court evidentiary rulings, the federal habeas court's role is limited to determining whether a trial judge's error is so extreme that it constituted denial of fundamental fairness under the Due Process Clause of the Fourteenth Amendment." *Castillo v. Johnson*, 141 F.3d 218, 224 (5th Cir. 1998). Trahan explicitly testified that he did not know which individual at the Victoria County Sheriff's Department considered Hadamek a "usual suspect." (Trial Tr. 504). Because Trahan could not identify the particular individual who made the comment, his testimony did not show that any testifying Sheriff's Department employee was biased. Therefore, the trial court's ruling appears reasonable and did not violate the Due Process Clause. Accordingly, the Court finds that Hadamek is not entitled to habeas relief for his abuse of discretion claim.

## Certificate of Appealability

A Certificate of Appealability will not be issued unless the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 120 S.Ct. 1595, 1603-04 (2000) (internal quotations and citations omitted). Stated differently, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*; *Beasley v. Johnson*, 242 F.3d 248, 263 (5th Cir. 2001). A district court may deny a Certificate of Appealability, *sua sponte*, without

requiring further briefing or argument. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). The Court has determined that Hadamek has not made a substantial showing that reasonable jurists would find the Court's procedural ruling to be debatable; therefore, a Certificate of Appealability from this decision will not be issued.

### Conclusion

The court **ORDERS** the following:

1. This petition for a writ of habeas corpus is **DISMISSED**, with prejudice.

2. Respondent's motion for summary judgment (Dkt. #11) is **GRANTED**.

3. A Certificate of Appealability is **DENIED**.

**SIGNED** on this 31st day of March, 2007.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE